COMMONWEALTH vs. PAUL R. COHEN.

Suffolk.    October 10, 1978. — November 14, 1978.

Present: HALE, C.J., ROSE, & ARMSTRONG, JJ.

*Search and Seizure. Constitutional Law*, Search and seizure. *Probable Cause. Evidence*, Relevancy and materiality, Hearsay, Admissions and confessions. *Error*, Whether error harmful. *Practice, Criminal*, Directed verdict. *Conspiracy*.

Inaccuracies in a search warrant which correctly described the premises to be searched as "apartment 2" but incorrectly stated that it was on the second floor of the building when it was on the third and which incorrectly identified one of the occupants of the apartment did not affect the integrity of the warrant as a whole and had no debilitating effect upon the existence of probable cause to search the apartment. [654–656]

The judge at a criminal trial erred in admitting hearsay testimony of a statement made in the presence of the defendant and to which the defendant made no reply since the defendant was under arrest at the time and was not obliged to say anything in order to prevent an admission by silence. [657–658]

At the trial of indictments for unlawful possession of a Class B controlled substance and hypodermic needles and syringes, there was sufficient evidence of the defendant's knowledge of and control over the illegal items to warrant the denial of his motion for directed verdicts. [658–659]

At the trial of three defendants for conspiracy to possess with the intent to distribute heroin, the evidence, although circumstantial, was sufficient to warrant the denial of the defendants' motions for directed verdicts. [659–660]

INDICTMENTS found and returned in the Superior Court on February 5, 1974.

Two of the cases were tried before *Zarrow*, J., and one was tried before *Mazzone*, J.

The case was submitted on briefs.

*Fern L. Nesson* for the defendant.

*Thomas E. Peisch*, Assistant District Attorney, for the Commonwealth.

HALE, C.J. On February 5, 1974, the defendant was indicted on charges of unlawful possession of a Class B controlled substance (amphetamines) (Indictment No. 80203), unlawful possession of hypodermic needles and syringes (Indictment No. 80204), and, together with Tina Cohen and Hem Dep Chin, conspiracy to possess with the intent to distribute heroin (Indictment No. 80205). On May 14, 1975, the defendant was convicted by a jury on Indictments No. 80203 and 80204. In April, 1976, the defendant and Tina Cohen were tried by a jury on the conspiracy charge (No. 80205) and found guilty of conspiracy to possess heroin. The convictions in the first trial are before us on a bill of exceptions and that in the second on assignments of error. The cases have been consolidated for the purpose of appeal.

The defendant argues (1) that evidence seized pursuant to a search warrant should have been suppressed for both trials because the premises to be searched were misdescribed, and (2) that his motions for a directed verdict at each trial should have been allowed. We state facts which could have been found on the evidence in the course of our discussion of each of those contentions.

1. *The search warrant.* On October 26, 1973, Boston police officer Edward D. Simmons obtained a warrant to search an apartment at 119 Charles Street. The affidavit described the premises to be searched as "119 Charles Street, Boston, apartment 2, second floor (over stores on street), four story brick apartment dwelling" and identified and occupants as "Tina Concree, Paul Cohen." The warrant described the premises as "Apartment No. 2 over stores on street . . . of a certain building . . . numbered one hundred and nineteen in Charles Street" occupied by "Tina Concree and Paul Cohen."

The judge hearing the motion to suppress found that the building at 119 Charles Street consisted of four stories with stores occupying the street level. Counting from the

street up, apartment 2 is located on the third floor. Tina Concree was not an occupant of the apartment searched although an individual named Tina Concree had lived in another apartment at 119 Charles Street prior to the events in question. Tina Cohen occupied apartment 2. The judge found that the misinformation resulted from Tina Cohen's having identified herself to Officer Simmons' informant as Tina Concree. In any event, the judge found that the affiant did not know the true identity of Tina Cohen when he executed the affidavit and did not intentionally mislead or misinform the magistrate who issued the warrant.

In order to protect against the unbridled authority of a general warrant the Fourth Amendment to the United States Constitution requires that search warrants describe the premises to be searched with particularity. *Commonwealth* v. *Pope*, 354 Mass. 625, 628–629 (1968). *Commonwealth* v. *Rugaber*, 369 Mass. 765, 767 (1976). However, neither warrants nor their supporting affidavits require a conveyancer's precise language, and "the rigors of an average criminal investigation are not to be intensified by a pecksniffian attention to noncrucial detail on review." *Commonwealth* v. *Von Utter*, 355 Mass. 597, 600 (1969). *Commonwealth* v. *Pellier*, 362 Mass. 621, 625 (1972). The standard is not whether the description given is technically accurate in every detail but whether it is sufficient to enable an officer to identify the place intended with reasonable effort, and whether there is a likelihood that another place might be mistakenly searched. *Steele* v. *United States (No.1)*, 267 U.S. 498, 503 (1925). *Commonwealth* v. *Gill*, 2 Mass. App. Ct. 653, 656 (1974). *United States* v. *Sklaroff*, 323 F. Supp. 296, 321 (S.D. Fla. 1971).

This standard was met by the warrant in question. The police executing the search warrant could, and apparently did, exercise their common sense and conclude that the floor count began with the floor above the stores. There was only one "apartment no. 2," and it was the only

apartment actually searched. Compare *Commonwealth v. Todisco*, 363 Mass. 445, 449 (1973); *Commonwealth v. Rugaber, supra* at 769; *United States v. Sklaroff, supra* at 318–320; *United States v. Goodman*, 312 F. Supp. 556, 558 (N.D. Ind. 1970). Contrast *United States v. Hinton*, 219 F.2d 324, 326 (7th Cir. 1955); *United States v. Higgins*, 428 F.2d 232, 234–235 (7th Cir. 1970).

With regard to the misidentification of Tina Cohen as Tina Concree, we find nothing in the record to warrant holding that the trial judge was in error in finding no deliberate misrepresentation. See *Commonwealth v. Gallinaro*, 360 Mass. 868, 869 (1971); *Commonwealth v. Reynolds*, 374 Mass. 142 (1977); *Commonwealth v. Kinnitt*, 2 Mass. App. Ct. 810 (1974). Contrast *Franks v. Delaware*, 438 U.S. 154 (1978). The misnomer was not material since the evidence seized was not taken from the person of Tina Cohen but from the premises specifically described in the affidavit and warrant. *Commonwealth v. Kinnitt, supra* at 811. The inaccuracy complained of did not affect the integrity of the warrant as a whole and had no debilitating effect upon the existence of probable cause to search the apartment. Compare *Commonwealth v. Reynolds, supra* at 147, and cases cited; *Commonwealth v. Piso*, 5 Mass. App. Ct. 537, 543 (1977). We further conclude that "the prophylactic value of excluding evidence in this case would be nil." *Commonwealth v. Sheppard*, 5 Mass. App. Ct. 765 (1977).

2. *Sufficiency of evidence at trial for possession (Indictments No. 80203 and 80204).* There was evidence at this trial that Officers Kennedy, O'Malley and Currier, acting pursuant to the search warrant discussed above, obtained entrance to apartment 2. The defendant, Tina Cohen, and another individual were found on the premises. O'Malley seized four needles, a syringe, two instruments adapted for subcutaneous injection, and several capsules and pills from a bureau in the master bedroom. Laboratory analyses showed that the capsules contained amphetamine derivatives, Class B controlled substances under the

provisions of G. L. c. 94C, § 31. Currier seized various items of correspondence addressed to Tina Cohen at the Charles Street address, a driver's license issued to Tina Cohen, and a letter addressed to Mrs. Paul Cohen at 28 Leland Street, Jamaica Plain. Currier also found a letter signed "Tina" addressed to Paul Cohen at 28 Leland Street, Jamaica Plain, in the same bureau from which the drugs were seized.

There is no merit to the exceptions taken by the defendant to the admission of the items bearing the name of Tina Cohen. The evidence was relevant to the issue of the defendant's relationship with Tina Cohen. Further, there was no error in admitting the letter addressed to Mrs. Paul Cohen. That letter was also introduced to prove the existence of a relationship by showing that at one time Tina Cohen had the same address in Jamaica Plain as the defendant and that she held herself out as his wife. The letter was therefore not inadmissible as hearsay. Compare *Commonwealth* v. *Ellis*, 373 Mass. 1, 7–8 (1977).

Before we consider the question whether the above evidence was a sufficient basis for finding possession we note that there was testimony by Currier that two individuals entered the apartment and that one of them stated that he had rented the front room from "Mr. Paul and Mrs. Tina Cohen." The defendant, who was present and already under arrest when this statement was made, did not respond. We hold that it was error to have allowed this testimony in evidence over the defendant's objection. The statement was hearsay and was inadmissible unless it could have been determined that when it was made the defendant's silence constituted an adoptive admission. *Commonwealth* v. *Morrison*, 1 Mass. App. Ct. 632, 634 (1973), and cases cited. Since he was under arrest, "the defendant was under no obligation to say anything, let alone contradict a statement allegedly made in his presence." *Commonwealth* v. *Morrison, supra*. Since the remaining evidence of possession is not so overwhelming as to assure us that the jury would have convicted the de-

fendant without it, we cannot regard the error as harmless. See *Commonwealth* v. *Anderson,* 245 Mass. 177, 187–188 (1923); *Commonwealth* v. *Stone,* 321 Mass. 471, 474 (1947). See also *Fahy* v. *Connecticut,* 375 U.S. 85, 86–87 (1963); *Commonwealth* v. *Guerro,* 349 Mass. 277, 282 (1965); contrast *Commonwealth* v. *Grieco,* 5 Mass. App. Ct. 350, 359 (1977). The defendant's exceptions with respect to Indictments No. 80203 and 80204 must therefore be sustained.

We turn next to the question whether a verdict of not guilty should have been directed on the basis of the remaining evidence. If that be so, we must also order the entry of a judgment of acquittal. We conclude that the evidence, considered in the light most favorable to the Commonwealth, was sufficient for the jury to infer the existence of the essential elements of the crimes charged in the indictments. *Commonwealth* v. *Sandler,* 368 Mass. 729, 740 (1975). *Commonwealth* v. *Nichols,* 4 Mass. App. Ct. 606, 612 (1976). Proof of the defendant's knowledge of and control over the illegal items could properly be established by circumstantial evidence and the inferences that could be drawn therefrom. *Commonwealth* v. *Montecalvo,* 367 Mass. 46, 54 (1975). *Commonwealth* v. *Xiarhos,* 2 Mass. App. Ct. 225, 231 (1974). Such inferences need not be necessary or inescapable, as long as they are reasonable, possible, and not unwarranted because too remote from the ordinary course of events. *Commonwealth* v. *Albano,* 373 Mass. 132, 134 (1977). *Commonwealth* v. *Beckett,* 373 Mass. 329, 341 (1977). The jury could reasonably have inferred from the defendant's presence in the apartment and from the correspondence found in the master bedroom that the defendant resided at 119 Charles Street. They could also have inferred from the discovery of the illegal items in the same bedroom that the defendant had knowledge and control of such items. Compare *Commonwealth* v. *Buckley,* 354 Mass. 508 (1968); *Commonwealth* v. *Harvard,* 361 Mass. 528 (1972); *Commonwealth* v. *Rugaber, supra.* Contrast *Common-*

*wealth* v. *Pursley*, 2 Mass. App. Ct. 910 (1975); *Commonwealth* v. *Williams*, 3 Mass. App. Ct. 370 (1975).

3. *Sufficiency of evidence at trial for conspiracy (Indictment No. 80205).* A fuller story of the events unfolds as we examine the evidence introduced at the conspiracy trial. There was evidence that when the police knocked at the door to apartment 2 and announced themselves, they heard footsteps running away from the door and a toilet flushing. As they entered the apartment, the defendant was observed coming from the kitchen and bathroom area.

Tina Cohen's driver's license and several telephone notices in her name at the Charles Street address were found. In addition, various items in the name of Paul Cohen, 28 Leland Street, Jamaica Plain, were seized from the master bedroom; i.e., a letter, a Department of Public Welfare card, and several bills. The police also found glassine bags in the kitchen that contained a residue of heroin, male and female clothing in the bedroom, a spiral notebook containing the name Sam followed by dollar amounts, and a piece of paper with the notation "Sam 331-1275." Telephone company records were introduced showing that Hem Dep Chin's number was 331-1275. Before leaving the apartment to accompany the officers to the police station, the defendant took some clothing from the same bedroom from which the other items had been seized.

While the officers were inside apartment 2, Hem Dep Chin was observed entering the lobby of 119 Charles Street by Officers Simmons and Linsky, who were maintaining surveillance outside. When Hem Dep Chin pressed the buzzer to apartment 2, O'Malley responded from the apartment, "Who is it?" He answered, "Sam." He was thereupon arrested by Simmons and Linsky and searched. In addition to two hundred and forty-nine bags

of heroin seized from "Sam," the police found a phone book containing the notation "Paul, 523–6039."[1]

We first consider two exceptions to the admissibility of certain evidence. The documents in the name of Tina Cohen were relevant to show a relationship between Tina Cohen and the defendant. Nor was there any error in admitting the spiral notebook and the paper with the telephone number seized from apartment 2. A check against telephone company records revealed that Hem Dep Chin, or "Sam" had the number written on the paper. Although the number was meaningless standing alone, with the arrival of "Sam" at apartment 2 it was admissible to show that there had been previous telephone communications to plan the delivery and that the defendant had knowledge of "Sam's" number.

We conclude that sufficient competent evidence relating to each essential element of the conspiracy charged was presented such that the denial of the defendant's motion for a directed verdict was not error. Circumstantial evidence is the usual mode of proving conspiracy since direct evidence is often unavailable. *Commonwealth* v. *Nelson*, 370 Mass. 192, 200–201 (1976), and cases cited. The evidence presented here was sufficient to permit a reasonable inference by the jury that the defendant, Tina Cohen, and Hem Dep Chin were participating in a plan to possess heroin. See *Commonwealth* v. *Smith*, 163 Mass. 411, 418 (1895); *Commonwealth* v. *Nelson, supra.*

The exceptions on Indictments No. 80203 and 80204 are sustained. The judgment on Indictment No. 80205 is affirmed.

*So ordered.*

---

[1] The trial judge did not allow the testimony admitted at the earlier trial that an unidentified declarant stated that he rented a room from Mr. Paul and Mrs. Tina Cohen.