Following a jury trial,[2] the defendant was convicted of unlawful possession of a class A substance with the intent to distribute in violation of G. L. c. 94C, § 32(a ). He pleaded guilty to the subsequent offense portion of the indictment, pursuant to G. L. c. 94C, § 32(b ), and was then sentenced to a term of three and one-half to four years in State prison. In this appeal, the defendant claims error in the expert police testimony and the prosecutor's closing argument. We affirm.
1. Trooper Cyr's testimony. At trial, Trooper Mark Cyr of the State police gang unit testified as a nonpercipient police expert on drug investigations. The defendant argues that Trooper Cyr's testimony was improper because it went to the heart of the case and answered the ultimate question. We disagree. Because the defendant did not object to the testimony, we review for error, and if error exists, whether it created a substantial risk of a miscarriage of justice. Commonwealth v. Freeman, 352 Mass. 556, 564 (1967). An expert may be called to provide an opinion, even if it "touches on the ultimate issue of the case. The only limitation is that the subject matter discussed be within the witness's field of expertise and that the witness not directly express his views on the defendant's guilt." Commonwealth v. Tanner, 45 Mass. App. Ct. 576, 579 (1998).
Here, Trooper Cyr testified, inter alia, that (1) "the lack of scales, bags or other distribution paraphernalia found" could be explained by a dealer purchasing premeasured packages of heroin in bulk in Providence and reselling them in Fall River, making paraphernalia needless; (2) "[s]urveillance is undetected observation of drug dealers or other persons doing illegal activity"; and (3) hypothetically, if the quantity of drugs found in the defendant's mother's car was stored in the manner in which it was found, it would be "consistent with intent to distribute."
Trooper Cyr's testimony was explanatory and was directed to "help jurors interpret evidence that lies outside of common experience." Tanner, supra at 581. The intricacies of drug distribution investigations are not within the common understanding of jurors, including how and in what form particular drugs are sold and stored in bulk in each town in the Commonwealth. See Commonwealth v. Wilson, 441 Mass. 390, 400-401 (2004). Trooper Cyr's testimony was within his field of expertise as a drug crime investigator, properly couched in hypothetical language, and not suggestive of any direct opinion as to the defendant's guilt. Any risk that the jury would "forego independent analysis of the facts and bow too readily to the" expert's opinion, Commonwealth v. LaCorte, 373 Mass. 700, 705 (1977), quoting from McCormick, Evidence § 12, at 27 (2d ed. 1972), was mitigated by the judge's instruction that it was fully within the jury's purview to accept or reject the expert testimony in order to reach their verdict. See Commonwealth v. Canty, 466 Mass. 535, 545 (2013). There was no error, and thus, no risk that justice miscarried.
2. Closing argument. The defendant also claims for the first time on appeal that the prosecutor relied on facts not in evidence during his closing argument. In particular, the defendant takes issue with the prosecutor's statement that he admitted the $675 found in the defendant's room was "consistent with the rent in Fall River, but [it was] November 4th. Rent is usually due November 1st, correct, or the first of the month." Because the defendant did not object to this argument, again we review for error, and if any, whether it created a substantial risk of a miscarriage of justice. In evaluating this claim, we ask whether "the prosecutor's error [was] limited to 'collateral issues' or did it go to the heart of the case ...? What did the judge tell the jury, generally or specifically, that may have mitigated the prosecutor's mistake, and generally did the error in the circumstances possibly make a difference in the jury's conclusions?" Commonwealth v. Kelly, 417 Mass. 266, 271 (1994) (quotation omitted).
First, the issue of when rent is typically due in Fall River was not a fact in evidence.[3] However, paying rent is surely within the common experience of lay jurors.[4] In light of our other two considerations, we conclude that to the extent there was any error, no substantial risk of a miscarriage of justice was created. See Commonwealth v. Ridge, 455 Mass. 307, 331-332 (2009). Compare Commonwealth v. Coren, 437 Mass. 723, 730-733 (2002).
Second, the judge gave two curative instructions, both before the closing argument and during the jury instructions, informing the jury that closing arguments are not evidence. Although the instructions were general, the prosecutor's comments were not particularly inflammatory. Compare Commonwealth v. Santiago, 425 Mass. 491, 501 (1997). Therefore, these standard instructions were sufficient to mitigate any potential prejudice the statements could have had on the jurors. See Commonwealth v. Kozec, 399 Mass. 514, 518 (1987). Furthermore, "[j]urors are presumed to follow a judge's instructions." Commonwealth v. Williams, 450 Mass. 645, 651 (2008).
Finally, we are not persuaded that, in light of the totality of the prosecutor's argument and the curative instruction, the statement influenced the jury to convict the defendant. See Ridge, supra at 330. The statement was limited to rebuking the defendant's evidence and closing argument about rent payments in Fall River. See Commonwealth v. Perez, 444 Mass. 143, 152-153 (2005). "Intent is a factual matter that may be proved by circumstantial evidence," such as the amount of money found in his room. Commonwealth v. LaPerle, 19 Mass. App. Ct. 424, 427 (1985). However, the jury could have disregarded the money altogether and nevertheless found intent-from the two "hide cans" filled with 350 bags of prepackaged heroin found in the defendant's mother's car, which the defendant was seen driving, and the defendant's statement to police that "that's all" there was-even absent distribution paraphernalia. The money was not an important part of the prosecutor's argument, which instead focused on the defendant's admission regarding the drugs and the complete lack of use paraphernalia. See Commonwealth v. Rugaber, 369 Mass. 765, 770 (1976) ; Commonwealth v. Sepheus, 468 Mass. 160, 167-168 (2014).
Judgment affirmed.

The defendant's first trial resulted in a mistrial. The defendant appeals the conviction resulting from his second trial.

The issue of rent in Fall River more generally was introduced twice in the trial. Detective Athanasios Parousis did not dispute that rents in Fall River may be around $675. Trooper Mark Cyr testified that $675 is not a significant amount of money, is not unreasonable for rent in the area, and could increase depending on the amount of people living in a particular house. He also agreed that "a lot of people collect their rents ... in cash."

Notably, the jury's experience with paying rent could have cut either way-just as they could have assumed rents are typically due at the beginning of the month, they were likewise free to import their experiences with paying rent at other times of the month and the not-uncommon experience of paying the rent a few days late. See Simon v. Solomon, 385 Mass. 91, 105 (1982).